**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| **QUENTIN TYLER MIMS** | § | |
| **On behalf of himself** | § | |
| **and All Others Similarly Situated** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. 2:06cv206 TJW** |
| | § | **JURY DEMANDED** |
| | § | |
| **CARRIER CORPORATION** | § | |

<u>**MOTION FOR NOTICE TO POTENTIAL PLAINTIFFS, FOR LIMITED DISCOVERY,**
**AND CONDITIONAL CERTIFICATION**</u>

Plaintiff, individually, and on behalf of those similarly-situated, files this Motion for Notice to Potential Plaintiffs, For Limited Discovery, and Conditional Certification, and would show the Court as follows:

## I.
### OVERVIEW

Plaintiff sued Carrier to recover unpaid overtime wages that were not paid in accordance with the Fair Labor Standards Act ("FLSA"). Specifically, Carrier fails to pay Plaintiff, and those similarly situated to him, for all activities that occur within the continuous workday – that is, after the first principle activity and before the last principle activity of the day - as required by the FLSA. *See IBP, Inc. v. Alvarez*, __ U.S. __, 126 S. Ct. 514 (2005). These activities include complying with Carrier security procedures, locating and obtaining personal protective equipment ("PPE"), donning/doffing PPE, walking to and from workstations, complying with Carrier attendance and tardiness tracking procedures (through the use of a time clock), and performing pre- and post shift activities required to get ready for production work and cleanup after production work. Rather than track and pay for the actual time these duties are performed, Carrier pays its employees for a specified shift time. This shift time fails to compensate

Plaintiffs for their actual hours of work.  A group of similarly situated employees exists at Carrier's Tyler Plant in that these hourly employees perform similar job duties under the same pay provisions.  Consequently, these individuals should be notified of this action and their right to participate if they so desire.

The issues presented in this case and in this Motion for Notice are not new to this Court. On November 7, 2006, the Court considered a request that collective action notice to be sent to a companywide class of workers who engaged in compensable pre-shift and post-shift work activities, including donning/doffing of personal protective equipment, walking to/from workstations, waiting for the shift to begin, and performing other pre- and post-shift work. *Allen v. McWane, Inc*., 2006 WL 3246531 (E.D. Tex. Nov. 7, 2006).  The issues presented in this Motion for Notice are the same the Court considered in *McWane*, with one notable exception – Plaintiff does not seek notice to facilities beyond the one at which he and the 238 current opt-in Plaintiffs were employed.[1]  As in *McWane*, which applied the appropriate legal standards for collective action Notice and limited discovery, the Court should permit Notice to issue to the hourly workers in Carrier's Tyler Plant.

Although Plaintiff believes he will be able to establish Carrier FLSA violation at trial, the merits of the case are not at issue in this Motion.  As set forth herein, because Plaintiff readily meets the lenient standard applicable at this stage, conditional certification and notice to the Potential Plaintiffs is appropriate. *See, e.g., Barnett v. Countrywide Credit Industries, Inc*., 2002

---

[1]     At this time, Plaintiff is moving for Notice for employees at Carrier's Tyler Plant.  Plaintiff continues to maintain that the same illegal practices in place at the Tyler Plant are in place at other facilities, but is cognizant of the requirement to adduce some evidence to support notice beyond the Tyler Plant.  Because the Court limited discovery to permit Defendant to take five plaintiff depositions during the case management conference on September 18, 2006, Plaintiff has not deposed a corporate representative concerning the practices at other Carrier plants.  If discovery shows the same pay practices exist at other locations, Plaintiff may seek the issuance of notice to employees at the Carrier facilities with the same pay practices.

WL 1023161 (N.D. Tex. 2002) (certifying nationwide class of employees challenging their employer's decision to classify them as exempt under the FLSA).

## II.
### FACTUAL BACKGROUND

The FLSA requires payment of overtime compensation to all non-exempt employees when they work in excess of forty (40) hours in one week 29 U.S.C. § 207(a); 29 C.F.R. § 778.101.

**A.    Defendant's Hourly Employees Are Similarly Situated With Respect to Job Duties and Pay Provisions.**

The declarations submitted in the Appendix demonstrate that a group of similarly situated current and former employees exist in that they share common job duties and pay provisions. (Exhs. A-V, ¶¶ 2-10).  The declarations are from individuals who worked at Carrier's Tyler Plant and concern the work and pay practices in that plant.  (*Id.*).  Plaintiff and the Opt-in Plaintiffs (collectively "Plaintiffs") work(ed) as hourly paid employees in Carrier's Tyler Plant.  Although Plaintiffs worked for Carrier in a variety of departments and positions during past three years, they all perform substantially the same tasks under the same pay provisions.  (*Id.*).  Plaintiffs were all paid according to their assigned shift time and not paid for the time they spent working before and after their assigned shift time.  (*Id.* at ¶ 11).

To enter the Carrier premises, Carrier employees were required by the company to go through a security turnstile and comply with the required security procedures.  Plaintiffs could not enter the premises or do their jobs if they did not pass through this security turnstile and comply with Carrier's procedures.  (*Id.* at ¶ 2.).

After going through the security turnstiles, Plaintiffs walked to the entrance to the plant. (*Id.* at ¶ 3).  It was a Carrier requirement that before Plaintiffs could enter the actual plant building, they were required by Carrier to put on company-required safety equipment (safety

glasses).  (*Id*.).  There was a sign posted by Carrier in several places in the plant, that required employees to put on this equipment, and the plant manager or other supervisors would discipline employees who did not have on their safety glasses as they entered the actual plant building. (*Id*.).

After entering the plant building, Carrier required Plaintiffs to punch in at the time clock located near the plant doors or at time clocks located in various locations in the plant building. (*Id*. at ¶ 4).

After punching in, Plaintiffs went to the area where their company-required safety equipment was stored in order to locate and obtain the required equipment and put it on.  (*Id*. at ¶ 5).  Some employees stored this equipment in their work areas and others stored the equipment in storage lockers away from their storage areas.  (*Id*)  This safety equipment includes, but is not limited to, earplugs, gloves, aprons, and protective sleeves.  (*Id*.).  This safety equipment was required by Carrier in order for Plaintiffs to perform their jobs.  Some or all of the protective equipment was required to be put on prior to the beginning of the shift time so that Plaintiffs were "ready" to engage in their assigned tasks for the day right at the beginning of the shift. (*Id*.).

Plaintiffs were also required to get themselves and their work areas ready to start their production work prior to the shift.  (*Id*. at ¶ 6).  To perform these tasks, they were required to arrive before the start of their shift to have time to get ready.  (*Id*.).  Plaintiffs were expected to be ready to begin their assigned tasks at the beginning of their shift and could be marked tardy and subjected to discipline if they were not.  (*Id*.).  These pre-shift tasks were understood to be mandatory in order to be ready to perform their assigned, production-related tasks at the beginning of the shift time.  (*Id*.).

Although Carrier gave the employees an unpaid 30 minute break for lunch, they worked through part of the 30 minute period and were not free from duty for the entire 30 minute period. (*Id*. at ¶ 7).  Plaintiffs removed some or all of their safety-related protective equipment before going to lunch.  (*Id*.).  Also, in order to be ready to start back to work at the end of the lunch period, they had to be back at their work stations with all of their protective gear back on and be ready to engage in production work at the end of the lunch period.  These donning/doffing activities required Plaintiffs to engage in work during the lunch period so that they did not get 30 minutes free from duty to eat lunch.  (*Id*.).  Carrier did not pay Plaintiffs for the time they spent doing work during the lunch period and paid them as if they were free from duty for the entire 30 minute lunch period.  (*Id*.).

At the end of the assigned shift, Carrier required Plaintiffs to clean up their work areas. (*Id*. at ¶ 8).  They also had to remove their safety-related protective equipment at the end of the assigned shift activities.  (*Id*.).  Although Carrier gave Plaintiffs a few minutes before the end of the shift time to do these activities, that time was not adequate to allow them to perform these activities before Carrier stopped paying them at the end of the shift time.  (*Id*.).

After the shift time was over and Plaintiffs had finished their post-shift duties, they were required by Carrier to clock out and proceed to the exit of the actual plant building.  (*Id*. at ¶ 9). They were still required to wear some safety equipment until they exited the plant building. (*Id*.).

After leaving the plant building, Plaintiffs would remove the rest of their safety equipment and go to the security turnstile.  (*Id*. at ¶ 10).  As in the morning, Carrier required that they follow the security procedures at the security turnstile in order to leave the premises.  (*Id*.).

Carrier did not pay Plaintiffs for their actual work time, but paid them according shift time.  (*Id*. at ¶ 11).  It was Carrier's policy to only pay these employees for the time between the

assigned shift start time and the assigned shift end time, which was at least eight hours per day unless they were scheduled for a longer shift. (*Id*.). Carrier did not pay them for the actual time they spent doing the required and expected work activities prior to the beginning shift time, during the lunch break and after the end of the shift time. (*Id*.). These uncompensated activities were necessary for Plaintiffs to perform their jobs with Carrier and were for Carrier's benefit. (*Id*.).

Carrier knows the actual amount of time Plaintiffs spent performing actual work duties. (*Id*. at ¶ 14). The security turnstile information and time clock punches more accurately record the time Plaintiffs perform work for Carrier. (*Id*.). Nonetheless, Carrier pays its employees for shift time, irrespective of the actual hours worked by Plaintiffs. The total amount of uncompensated time, including the improperly compensated lunch period, exceeds 45 minutes per day.

**B.      A Group of Similarly Situated, Potential Plaintiffs Exists**

Plaintiffs all testify that they are aware of and observed the work habits their co-workers. (*Id*. at ¶ 12). These individuals were required to perform the same kinds of company-required, pre- and post-shift activities as Plaintiffs. (*Id*.). Like Plaintiffs, these other employees: (1) performed the same kinds of donning/doffing of personal protective equipment, walking to/from workstations, waiting for the shift to begin, and performing other pre- and post-shift work, (2) were not given 30 minutes free from duty for their lunch breaks, (3) worked over forty hours a week; and (4) were paid according to shift time which did not include the pre-shift and post-shift work. (*Id*.). Plaintiffs have identified many of their similarly situated co-workers by name. (*Id*.).

Plaintiffs are also aware of other employees at Carrier's Tyler facility who would join this case if they were aware of it. (*Id*. at ¶ 13). While they do not recall the names and addresses

of all these individuals, they have identified, by name, many of the individuals who have expressed an interest in participating in this case.  (*Id.*).

### III.
### REQUEST FOR § 216(B) NOTICE TO POTENTIAL PLAINTIFFS

The purpose of this Motion is to seek Court-supervised notice to all current and former hourly paid employees who worked for Defendant in the Tyler facility between three years prior to the date the Court approves Notice and the present.  ("Potential Plaintiffs").  As shown below, Plaintiff has met the lenient standards for notice to be issued to Potential Plaintiffs.

**A.**     **The District Court is Authorized to Issue Notice to the Potential Plaintiffs and Should Do So Immediately.**

The FLSA's "collective action" provision allows one or more employees to bring an action for overtime compensation on "behalf of himself or themselves and other employees similarly situated."  29 U.S.C. § 216(b); *see also*, *McWane,* 2006 WL 3246531 at * 1.  District courts have discretion to allow a party asserting FLSA claims on behalf of others to notify potential plaintiffs that they may choose to "opt-in" to the suit.  *See Hoffman-La Roche, Inc. v. Sperling,* 493 U.S. 165, 169 (1989).  Court-authorized notice protects against "misleading communications" by the parties, resolves the parties' disputes regarding the content of any notice, prevents the proliferation of multiple individual lawsuits, assures joinder of additional parties is accomplished properly and efficiently, and expedites resolution of the dispute.  *Id.* at 170-172.

**B.**     **The Two-Stage Certification Process**

This Court has already determined that the two-stage process is the appropriate approach to use when considering a motion for notice to potential plaintiffs.[2]  *McWane*, 2006 WL 3246531

---

[2]       The Fifth Circuit ruled long ago that Rule 23 cases and Section 216(b) actions are "mutually exclusive and irreconcilable."  *LaChapelle v. Owens-Illinois, Inc.,* 513 F.2d 286, 289 (5th Cir. 1975).  Over a decade ago, the Fifth Circuit mentioned the existence (at that time) of two different approaches used by other courts to the certification

at *1.  This is the prevailing approach used by district courts.  *Id.* (citations omitted).  In *Barnett*

*v. Countrywide Credit Indus., Inc*, Judge Barbara Lynn of the Northern District of Texas

succinctly stated the two stage process as follows:

> First, the Court must make an initial inquiry into whether the Plaintiff has
> provided sufficient evidence that similarly situated potential Plaintiffs exist. At
> this stage, the Court uses a lenient standard to determine whether similarly
> situated persons exist, and if the Court determines that certification is
> appropriate, then it usually "conditionally certifies" the class. Second, the Court
> reexamines the class after notice, time for opting-in, and discovery have taken
> place. If the Court finds that the class is no longer made up of similarly situated
> persons, then it may decertify the class. This inquiry is usually conducted upon a
> motion filed by the Defendant.

*Barnett,* 2002 WL 1023161 at * 1 (N.D. Tex. May 21, 2002) (citations omitted).  Under the two-

stage approach, once the court makes the preliminary determination that the potential plaintiffs

are similarly situated, the case proceeds as a representative action throughout discovery.  *Mooney*

*v. Aramco Services Co.*, 54 F.3d 1207, 1214 (5th Cir. 1995).  This Court should follow its prior

precedent and use the two-stage approach in this case.

---

issue – the two stage approach and the Rule 23 approach.  *Mooney v. Aramco Services Co.*, 54 F.3d 1207, 1214 (5th Cir. 1995).  In the intervening time, the Rule 23 approach mentioned by the *Mooney* court and used by one Colorado district court in *Shushan v. Univ. of Colorado*, 132 F.R.D. 263, 265 (D. Colo. 1990) has been disavowed and abandoned by the Tenth Circuit Court of Appeals and is not the proper certification methodology to use in FLSA collective actions.  *Thiessen v. General Elec. Capital Corp*., 267 F.3d 1095, 1105 (10th Cir. 2001).

**C.**     **Plaintiffs Are Entitled To Notice Based On a Minimal Showing That A Similarly Situated Group of Plaintiffs Exist**.

**1.**     **The Standard for Notice is a "Lenient" One.**

Because the first step takes place prior to the completion of discovery, the standard for notice "is a lenient one."  *Mooney,* 54 F.3d at 1214.  This Court has recognized and applied this lenient standard in certifying a collective action and issuing notice to potential plaintiffs in a case almost identical to the case at bar.  *See McWane,* 2006 WL 3246531 at *2.  To impose a strict standard of proof at the notice stage would unnecessarily hinder the development of collective actions and would undermine the "broad remedial goals" of the FLSA.  *Garner v. G.D. Searle*, 802 F. Supp. 418, 422 (M.D. Ala. 1991);  *Sperling,* 118 F.R.D. at 407 ("[N]otice to absent class members need not await a conclusive finding of 'similar situations.'").  Only at the **second stage**, at the close of discovery, does the Court make a "factual determination" as to whether the class members are similarly situated.  *Mooney*, 54 F.3d at 1214.  The lenient standard applicable at the first stage "usually results in 'conditional certification' of a representative class, to whom notice is sent and who receive an opportunity to 'opt in.'" *TGF Precision*, 319 F. Supp. 2d 753, 755 (S.D. Tex. 2004).

**2.**     **Plaintiffs Need Only Make Substantial Allegations Supported by Sworn Statements at the Notice Stage.**

At the first stage of the two stage certification approach, courts determine whether a similarly situated group of plaintiffs exist based upon the allegations in a complaint supported by sworn statements.  *Mooney*, 54 F.3d at 1213-14; *see also, Grayson v. K-Mart Corp.*, 79 F.3d 1086, 1097 (11th Cir. 1996), *cert. denied*, 117 S. Ct. 435 (1996); *Brooks v. Bellsouth Telecom.*, 164 F.R.D. 561, 568 (N.D. Ala. 1995); *Sperling v. Hoffman-Laroche, Inc.*, 118 F.R.D. 392, 406-07 (D.N.J. 1988), *aff'd* 493 U.S. 165, 110 S. Ct. 482 (1989).  The record need only be "sufficiently developed . . . to allow court-facilitated notice" based upon "substantial allegations"

*Garner v. G.D. Searle*, 802 F. Supp. 418, 422 (M.D. Ala. 1991);  *Sperling v. Hoffmann-LaRoche Inc.*, 118 F.R.D. at 407*; see also Church v. Consolidated Freightways, Inc.,* 137 F.R.D. 294 (N.D. Cal. 1991), or "some factual support."  *Belcher v. Shoney's Inc.*, 927 F. Supp. 249, 251 (M.D. Tenn. 1996).

In the present case, Plaintiffs' Complaint alleges Defendant failed to pay its hourly workers for the actual time they spend performing work for the company within the continuous workday.  (Complaint, ¶¶ 4-9)  The Complaint identifies pre- and post-shift work activities that are excluded from payment to employees because Carrier pays employees according to designated shift time.  (*Id.*).  These uncompensated activities include complying with Carrier security procedures, locating and obtaining PPE, donning/doffing PPE, walking to and from workstations, complying with Carrier attendance and tardiness tracking procedures (through the use of a time clock), and performing pre- and post shift activities required to get ready for production work and cleanup after production work.  (*Id.*).  The Complaint also alleges that other hourly paid employees were similarly situated and deprived of overtime compensation. (Complaint, ¶¶ 15-20).

The allegations in the Complaint have been substantiated by the sworn declarations (pursuant to 28 U.S.C. § 1746) of 22 currently participating opt-in Plaintiffs who testify that they performed the same job duties and worked under the same pay provisions as one another and as other individuals who have not yet been notified about the case.[3]  (*See* Exhibits A – V, ¶¶ 2-13). Plaintiffs have made more than the "modest factual showing" necessary for the Court to issue notice.  *Realite v. Ark Restaurants Corp.*, 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998).

---

[3]     In *McWane*, the Court found notice appropriate on the basis of 14 declarations, some of which concerned facilities in other states.  The 22 declarations submitted in the appendix (Exhibits A - V) come from employees in a variety of departments on the two different shifts at Carrier's Tyler Plant.  Plaintiff could file additional declarations (and will do so if necessary), but elected not to submit duplicative and superfluous evidence at this time.

3.      **Plaintiffs Have Demonstrated That a Group of "Similarly Situated" Potential Plaintiffs Exist**

Plaintiffs are similarly situated to other current and former, hourly paid Carrier employees in that they perform(ed) similar, if not the same work, under the same conditions, and under the same pay provisions.  "To establish that employees are similarly situated, a plaintiff must show that they are similarly situated with respect to their job requirements and with regard to their pay provisions.  The positions need not be identical, but similar." *McWane*, 2006 WL 3246531 at *2 (citations omitted); *see also, Barnett v. Countrywide Credit Indus., Inc.,* 2002 WL 1023161, at *1 (N.D. Tex. May 21, 2002) (Lynn, J.) (internal quotation marks, brackets and citations omitted); *Dybach v. State of Fla. Dept. of Corrections.*; 942 F.2d 1562, 1567-68 (11th Cir. 1991). "[A]n FLSA class determination is appropriate when there is 'a demonstrated similarity among the individual situations ... some factual nexus which binds the named plaintiffs and the potential class members together as victims of a particular alleged [policy or practice].'" *McWane*, 2006 WL 3246531 at *2 (citations omitted); *Aguilar,* 2004 WL 2293842 at *2 (citing *Crain v. Helmerich and Payne Int'l Drilling Co.,* 1992 WL 91946, at *2 (E.D. La. Apr. 16, 1992) (quoting *Heagney v. European Am. Bank,* 122 F.R.D. 125 (E.D.N.Y.1988))).  In this case, Plaintiffs and the Potential Plaintiffs were deprived of overtime compensation because they were paid shift time and not paid for their actual hours of work.

The "similarly situated" requirement of § 216(b) is more elastic and less stringent than the requirements found in Rule 20 (joinder) and Rule 42 (severance) or Rule 23 (class actions). *Grayson v. K-Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996).  While evidence of a single decision, policy or plan will meet the similarly situated standard, *Sperling,* 118 F.R.D. at 407, a unified policy, plan, or scheme is not required to satisfy the more liberal "similarly situated" requirement of the FLSA.  *Grayson,* 79 F.3d at 1096.  Accordingly, "[a] court may deny a

plaintiff's right to proceed collectively only if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice." *Donohue v. Francis Services, Inc.*, 2004 WL 1161366 (E.D. La. May 24, 2004) (citations omitted).  In addition to these factors, other courts making the notice inquiry have sought to determine if there are other individuals who desire to opt in and who are similarly situated to those bringing the suit.  *Dybach*, 942 F.2d at 1567-68.  Thus, if other parties join the suit by filing their consents, this is evidence of a desire on the part of others to join the suit that should be considered by the Court.

In the present matter, Plaintiffs have met the <u>lenient</u> standard of showing that notice to Potential Plaintiffs is appropriate.  The evidence detailed in the Factual Background section of this Motion (and not repeated here at length) makes clear that similarly situated employees exist because they perform substantially the same tasks.  These activities include complying with Carrier security procedures, locating and obtaining PPE, donning/doffing PPE, walking to and from workstations, complying with Carrier attendance and tardiness tracking procedures (through the use of a time clock), and performing pre- and post shift activities required to get ready for production work and cleanup after production work.  *See, McWane*, 2006 WL 3246531 at *2.  The 22 declarations also show that Plaintiffs and Potential Plaintiffs were not paid for these tasks because they were paid shift time.  Finally, Plaintiffs and the Potential Plaintiffs "have a similar pay structure because they were all paid hourly."  *Id*. at * 3.

One of the factors some courts consider is some evidence of similarly situated individuals who desire to opt in and who should be given notice of their right to do so.  *See Dybach*, 942 F.2d at 1567-68.  Declarations have been submitted by 22 individuals who desire to opt in.  The fact that 238 additional individuals have elected to join the case without a notice evidences this fact.  (*Id*.).  Plaintiffs also identify, by name, other individuals who worked under the same

**Motion for Notice – Page 12**

conditions and pay provisions, who worked more than 40 hours without overtime pay, and who Plaintiffs believe would join this action if they were made aware of it through Court-supervised notice.  (Exhibits A-V, ¶ 13).  Because Plaintiffs have demonstrated there are other individuals who desire to opt into this case and have identified still other individuals who have not yet had the opportunity to do so, Plaintiffs have met their burden to justify Court-supervised Notice to the Potential Plaintiffs.

**IV.**

**RELIEF SOUGHT:  CONDITIONAL CERTIFICATION, ISSUANCE OF NOTICE TO POTENTIAL PLAINTIFFS, AND DISCLOSURE OF NAMES AND ADDRESSES.**

To facilitate the Notice process and preserve the rights of those who have not yet opted in, Plaintiff seeks conditional certification of and to send Court-supervised notice to all current and former hourly paid workers employed at Defendant's Tyler, Texas manufacturing facility from three years prior to the date the Court approves Notice to the present.

Plaintiffs ask the Court to approve the proposed Notice included in the Appendix.  (Exh. W)  This Notice is based on Notices issued in the Northern District of Texas in *Aguilar* and *Barnett*, and by this Court in *McWane* though it has been modified for this particular case. Plaintiffs have also submitted a proposed Consent Form to be submitted to the Court for those wishing to join this action.  (Exh. X).  Plaintiffs seek a sixty (60) day opt-in period.

Additionally, Plaintiffs seek an Order from this Court requiring Defendant to disclose the names, home addresses, home telephone numbers, social security numbers, and dates of birth of the Potential Plaintiffs.  (*See McWane* Order, Nov. 7, 2006, Docket No. 48).  Plaintiff requests this information be provided within 11 days from the entry of the Court's Order and in usable electronic form to reduce any delays in sending out the Notices.  Plaintiffs agree to bear the cost of the mailings of the Notices.

Plaintiffs also request that this Court authorize Plaintiff's counsel to maintain an internet website which will be submitted to the Court in a separate Appendix.

**V.**
**CONCLUSION**

Plaintiffs and the opt-in Plaintiffs have presented detailed allegations and even more detailed sworn statements concerning their work with Defendants.  Plaintiffs and the opt-in Plaintiffs have identified an improper pay scheme that fails to pay overtime compensation to Carrier's hourly workers.  Because Plaintiffs have met their burden to show that similarly situated individuals exist who have not been notified about the present suit, the Court should enforce the collective action provisions of the FLSA and authorize notice.  The Court should grant Plaintiffs' Motion and enter an Order with the terms set forth in Plaintiff's proposed Order.

Respectfully submitted,


  /s/ J. Derek Braziel                                       
**J. DEREK BRAZIEL**
Texas Bar No. 00793380
**LEE & BRAZIEL, LLP**
1801 N. Lamar St.; Suite 325
Dallas, Texas 75202
(214) 749-1400   phone
(214) 749-1010   fax

**WILLIAM S. HOMMEL, JR.**
State Bar No. 09934250
Attorney-in-charge
William S. Hommel, Jr., P.C.
3304 S. Broadway, Suite 100
Tyler, Texas 75701
903-596-7100
903-596-7464 Facsimile

**CHARLES D. COWAN**
State Bar No. 04911150
Law Offices of C.D. Cowan, P.C.
414 South Bonner Avenue
Tyler, Texas 75702-8033
(903) 597-5500
(903)  597-5598 Facsimile

**ATTORNEYS FOR PLAINTIFF**

### CERTIFICATE OF CONFERENCE

On January 19, 2007, the undersigned attempted to confer with opposing counsel about this motion in a good faith attempt to resolve the matter without judicial intervention. Defendant's counsel advised that Defendant is opposed to the relief sought in this Motion. Therefore this motion is presented to the Court for a determination.

 /s/ J. Derek Braziel
**J. DEREK BRAZIEL**

### CERTIFICATE OF SERVICE

I hereby certify that on January 19, 2007, a copy of the foregoing document was electronically filed and was served on opposing counsel of record by HAND DELIVERY.

 /s/ J. Derek Braziel
**J. DEREK BRAZIEL**